*Formatted for Electronic Distribution*                                                                              *Not for Publication*

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF VERMONT

Filed & Entered
On Docket
August 12, 2014

_____

**In re:**

       **Suzanne and Etsuro Nishiyachi,**                                          Chapter 13
               **Debtors.**                                                    Case # 10-10350
_____

**Suzanne and Etsuro Nishiyachi,**
               Plaintiffs,                                                     Adversary Proceeding
       vs.                                                                              # 10-1031
**Citibank, N.A., Mortgage Electronic**
**Registration Systems, Inc.,**
**CTX Mortgage Company, LLC, and**
**EMC Mortgage Corporation, Inc.,**
               Defendants.
_____

*Appearances:*       *Heather R. Hammond, Esq.*       *Rebecca A. Rice, Esq.*
                      *Gravel & Shea*                           *Cohen & Rice*
                      *Burlington, VT*                         *Rutland, VT*
                      *For Defendants*                       *For Plaintiffs*

## MEMORANDUM OF DECISION
### STRIKING, OR ALTERNATIVELY, DENYING,
### JPMORGAN CHASE BANK, N.A.'S MOTION FOR SUMMARY JUDGMENT

      Suzanne and Etsuro Nishiyachi (the "Plaintiffs" or "Debtors") commenced this adversary proceeding by filing a complaint challenging the validity of a proof of claim ("POC") filed in their bankruptcy case.  JPMorgan Chase Bank, N.A., as successor to EMC Mortgage ("Chase") moved for summary judgment, asserting that there were no issues of material fact and it was entitled to relief as a matter of law.  For the reasons set forth below, the Court finds that Chase has not established either that motion is properly before the Court, or that, if it were, Chase would be entitled to summary judgment. Accordingly, the Court denies Chase's motion.

1

JURISDICTION

This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Order of Reference entered by Chief Judge Christina Reiss on June 22, 2012. The Court declares the claims addressed by the instant summary judgment motion to be core matters under 28 U.S.C. § 157(b)(2)(B) and (K), over which this Court has constitutional authority to enter a final judgment.

PROCEDURAL HISTORY AND UNDISPUTED MATERIAL FACTS

The Plaintiffs initiated this Chapter 13 case on March 15, 2010. On June 14, 2010, EMC Mortgage Servicing, LLC ("EMC") filed a POC on behalf of Citibank, N.A., as Trustee for Certificateholders of Structured Asset Investments II, Inc. Bear Sterns Mortgage Funding Trust ("Citibank"), alleging that the Plaintiffs were indebted to it in the amount of $358,851.88, and that the debt was secured by a mortgage on real property located in Montpelier, Vermont (see main case, Ch 13 # 10-10350, POC # 8; see also doc. # 69-1).[1] EMC attached to the POC (1) a mortgage dated December 29, 2006, in favor of Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for CTX Mortgage Company, LLC ("CTX"); (2) an assignment of the mortgage, dated April 29, 2009, executed by MERS on behalf of CTX and transferring the mortgage to Citibank; (3) a copy of a note signed by the Plaintiffs and evidencing debt in the amount of $312,000 payable to CTX; (4) an undated allonge transferring the note from CTX to Citibank; and (5) a lost note affidavit from EMC, as servicer for Citibank, asserting that the December 29, 2006 note that was endorsed to Citibank had been lost (see id.).

On August 1, 2010, the Plaintiffs filed the instant adversary proceeding, seeking an order disallowing the claim and invalidating the mortgage described in the POC (doc. # 1) (the "Complaint"). The Plaintiffs generally challenged the POC on the basis of standing. Additionally, the Plaintiffs specifically alleged that CTX may have lacked authority to convey a mortgage to the trust managed by Citibank, as CTX was a stranger to the pooling and service agreement ("PSA"). Alternatively, the Plaintiffs requested as relief that the Court determine how much the Debtors owed on this debt and to whom.

On September 20, 2010, Grant Rees, Esq., filed an answer to the Complaint on behalf of Citibank, generally denying that the Plaintiffs were entitled to relief (doc. # 3). On December 7, 2010, Attorney Rees withdrew from these proceedings. After his withdrawal, the Court held several status hearings in this case. However, as of November 21, 2011, Citibank still had not obtained alternate counsel to represent it in this matter. Accordingly, the Plaintiffs moved for an order to show cause why Citibank's answer should not be stricken due its failure to defend itself in this litigation to its conclusion, and the

---

[1] Unless specifically noted, all citations to Court documents are in Adversary Proceeding # 10-1031.

2

resulting prejudice (doc. # 9). At the hearing on that motion on December 20, 2011, the Court struck Citibank's answer, and the Clerk's Office then entered a default judgment against Citibank (doc. # 14). Subsequently, upon a showing of cause, the Court granted Citibank's motion to vacate that entry of default (doc. # 22). Citibank then answered the Complaint on August 17, 2012, again generally denying the Plaintiffs were entitled to relief (doc. # 24).

On April 5, 2013, Citibank responded to the Plaintiffs' first set of interrogatories, asserting it had located the note (see doc. ## 32, 69, 72-2). In the ensuing year, additional discovery requests and delayed responses protracted this litigation (see, e.g., doc. ## 33, 35, 41). On March 7 and 11, 2014, EMC and Wilmington Trust, N.A., as successor to Citibank ("Wilmington Trust"), responded to the Plaintiffs' second set of interrogatories (doc. ## 46, 47). Wilmington Trust's response was signed by a representative of Chase (doc. # 69 at 3). Shortly thereafter, Chase moved for summary judgment pursuant to Fed.R.Bankr.P. 7056 and Fed.R.Civ.P. 56, alleging that there were no disputed material facts, and it was entitled to judgment as a matter of law (doc. # 66) (the "Motion"). Chase attached to the Motion (1) an affidavit from its vice president, asserting that (a) it had obtained possession of the note and mortgage on August 28, 2009, and (b) it or its agent continuously possessed and continued to possess the note; and (2) an alleged copy of the original note without the allonge attached to the note in the POC, and instead accompanied by two undated CTX indorsements in blank, one of which is stamped out with an "indorsement cancelled" message (doc. ## 66-2, 66-3). Chase reiterated the affidavit allegations in its statement of undisputed material facts, which was also attached to the Motion (doc. # 66-1) ("SUMF").

The Plaintiffs responded that the Court should deny the Motion, asserting that Chase lacked standing to bring the Motion, as neither it nor EMC had ever entered an appearance in this matter nor answered the Complaint (doc. # 69 at 3-4) (the "Response"). Further, the Plaintiffs argued that even if Chase had standing to bring the Motion, there are genuine issues of material fact that preclude summary judgment (doc. # 69 at 4-5). Specifically, the Plaintiffs argue that the record contains conflicting evidence as to the status of the note since the Debtors' bankruptcy filing, and the Motion fails to explain the circumstances surrounding the lost note affidavit (doc. # 69 at 4). Additionally, the Plaintiffs state that Citibank transferred the claim to Wilmington Trust, not to Chase (id.; see main case, ch 13 # 10-10350 doc. # 85). Finally, the Plaintiffs observe that (1) the mortgage assignment attached to the POC was from MERS, as nominee for CTX, to Citibank, and dated April 29, 2009; and (2) the mortgage assignment in Chase's counsel's file was from MERS, as nominee for CTX, to Wilmington Trust, and dated March 18,

2013[2] (doc. # 69 at 5).  Further, the Plaintiffs assert, given that neither of these assignments are in favor of Chase, it is "problematic" to characterize Chase as the "'holder' of the claim" (id.).

On July 16, 2014, EMC answered the Complaint, presumably to address that concern raised in the Plaintiff's Response (doc. # 71).  That same day, Chase also replied to the Plaintiffs' Response, reiterating, and raising additional, arguments in support of its Motion (doc. # 72) (the "Reply").[3]  First, Chase asserts that it has standing because it has been the holder of the note payable to bearer since before the Plaintiffs filed their petition (doc. # 72 at 1-2).  Further, Chase alleges, the Plaintiffs did not challenge this assertion in its SUMF, and therefore the Court may consider this fact to be undisputed (doc. # 72 at 2).  As to the Plaintiffs' contention that it was not a proper party to this case, Chase asserts that it is because (1) it is the note holder and servicer, and (2) an unobjected-to notice of transfer of claim, that named Chase as the payee on the note, was filed in the Debtors' main case on May 22, 2014.  Finally, Chase construes the Plaintiffs' Response as raising a chain of title issue with respect to the note, and discredits such an argument as untenable under Vermont law.

## DISCUSSION

Summary judgment is proper if the record shows no genuine issue as to any material fact such that the moving party is entitled to judgment as a matter of law.  See Fed.R.Civ.P. 56; Fed.R.Bankr.P. 7056; see also Bronx Household of Faith v. Bd. of Educ. of the City of New York, 492 F.3d 89, 96 (2d Cir. 2007).  The moving party bears the burden of showing that no genuine issue of material fact exists.  See Vermont Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004).  A genuine issue exists only when "the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Celotex Corp. v. Catrett, 477 U.S. 317 (1986).  In making its determination, the court's sole function is to determine whether there is any material dispute of fact that requires a trial.  Anderson, 477 U.S. at 249; see also Palmieri v. Lynch, 392 F.3d 73, 82 (2d Cir. 2004).  In determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the moving party.  See Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of New Jersey, Inc., 448 F.3d 573, 579 (2d Cir 2006).

A claimant may demonstrate standing to file a POC relating to a secured claim in real property by establishing that it held the note on the day that the debtors filed their petition.  In re Parker, 445 B.R. 301,

---

[2]  In fact, this assignment, which is attached to the Response, is dated March 4, 2013 (doc. # 69-2 at 33).

[3]  Notably, both of the docket entries associated with Chase's original Motion and Reply indicate that the pleadings were filed on behalf of EMC.

4

306 (Bankr. D. Vt. 2011); 9A V.S.A. § 3-301; see also U.S. Bank Nat'l Ass'n v. Kimball, 2011 VT 81,¶ 13, 190 Vt. 210, 27 A.3d 1087 (Vt. 2011) (holding that, to enforce a note, a claimant must show that it was the holder of the note at the time that the complaint was filed). An entity may be the holder of a note if it is in possession of a note payable to "bearer" – i.e. a note indorsed in blank. 9A V.S.A. §§ 3-201, 3-205(b). If, however, a note is specially indorsed – i.e. payable to a specific entity – it may only be enforced by that specifically named entity. 9A V.S.A. §§ 3-201(b), 3-205(a).

      Initially, the Court considers the Plaintiffs' argument as to whether Chase is a proper party to bring the instant Motion. If the issue were merely that Chase has not entered an appearance or answered the Complaint, as the Plaintiffs suggest, the Court could possibly find that Chase's filing of the instant Motion would be sufficient to properly bring the matter before the Court. See, e.g., McGlothin v. Oates, No. 13-100, 2013 WL 674990 (D. Colo., Feb. 25, 2013) (noting that, under the local rules, a party to litigation enters an appearance by filing a pleading). The issue here, however, is not so limited. Rather, Chase is not a party to the instant adversary proceeding, as it was not named as a defendant in the Complaint, was not the subject of a motion to substitute party, pursuant to Fed.R.Bankr.P. 7025, and did not seek to intervene in this litigation pursuant to Fed.R.Bankr.P. 7024. See In re Austin, 294 B.R. 258, 259 (Bankr. E.D. Va. 2003). As proof that Chase is not a party to these proceedings, the Court notes that the docket shows both its Motion and Reply were actually filed by EMC[4] (see docket entries ## 66, 72). Because Chase is not a party to this litigation, the Court finds that the Motion is not properly before the Court, even if Chase does have standing to enforce the note. See Austin, 294 B.R. at 260. To properly bring such a motion before this Court, Chase must first move to intervene, or be substituted as a party defendant.

      In so concluding, the Court finds unpersuasive Chase's argument as to the effect of the notice of transfer of claim filed in the Debtors' main case on May 22, 2014. Although that document did indeed name Chase as the payee, the Court finds that it was not sufficient to make Chase a party to this separate litigation. See In re Umstead, 490 B.R. 186, 192 (Bankr. E.D. Pa. 2013) (stating that rules applicable to bankruptcy main cases are designed to facilitate expedited proceedings, without all the trappings of normal civil litigation incumbent in adversary proceedings). Chase did not automatically intervene in this litigation by filing its Motion; if Chase wishes to partake in this adversary proceeding, it must follow the proper procedure to become a party. See In re Altman, 265 B.R. 652, 655 (Bkrtcy.D.Conn.,2001) (citing Fuel Oil Supply and Terminaling v. Gulf Oil Corp., 762 F.2d 1283, 1287 (5th Cir.1985) (stating that Rule 7024 is a prerequisite to intervention)).

---

[4] EMC's answering of the Complaint has no effect on this Court's determination of whether the instant Motion is properly before the Court, as EMC is not the entity seeking summary judgment.

Even if the Motion was properly before the Court, the Court would find that Chase has not demonstrated that there are no genuine issues of material fact with respect to its right to enforce the note. First, the Court notes that neither party specifically addresses the allegations of the Complaint relating to CTX's authority to convey the mortgage to Citibank, on the basis that it was a stranger to the PSA. The Court reads such allegations to merely support the Plaintiffs' assertion that the named defendants may not have had possession of the note. To the extent that the Plaintiffs were attempting to raise claims based on alleged violations of the PSA, however, the Court determines that such claims do not state an independent right to relief. See Dernier v. Mortgage Network, Inc., No. 144-3-11 Wrcv, 2012 WL 4848670, at *2 (Vt. Super. June 12, 2012); In re Correria, 452 B.R. 319, 324 (1st Cir. 2011) (holding that mortgagors lacked standing to raise alleged violations of the PSA, when they were not parties to, or third-party beneficiaries of, the agreement). Moreover, alleged violations of the PSA are immaterial to the question of what entity had standing to file a POC. See In re Densmore, 445 B.R. 307, 310 n.2 (Bankr. D. Vt. 2011).

As for the question of standing to enforce the note, however, the Court finds the record insufficient to grant summary judgment. Here, the record contains conflicting evidence as to the status of the note on the relevant dates. EMC initially filed a POC on behalf of Citibank, asserting that the note had been assigned to it, and then lost. Chase later submitted the affidavit saying that it had had possession of the note since before the Plaintiffs filed their petition, and attached an alleged copy of the original note supposedly indorsed in blank. However, Chase failed to explain the circumstances that led to the creation and submission of EMC's affidavit, or what happened to the note allonge originally included with the POC which was now displaced by a note supposedly indorsed in blank.[5]

Chase argues that a creditor may supplement the record to establish standing after having filed a proof of claim (doc. # 72 at 3 (citing Miller v. Bank of America, N.A., et al., 2014 Bankr. LEXIS 2733 at *11 (Bankr. D. Vt., June 22, 2014) and Scafuro v. PennyMac Loan Services, LLC, 2013 Bankr. LEXIS 3658 at *2, 10 (Bankr. D. Vt., Sept. 4, 2013)). While this is indeed an accurate statement of the law in this District, in both of those cases, the initial evidence in support of the proof of claim did not conflict with later-submitted evidence in support of the summary judgment motions. Here, Chase has failed to explain why the affidavit submitted in support of its Motion should be credited over that submitted in support of the POC. Moreover, if the Court were to credit the prior affidavit, it would find that its simple assertion that the note "had been lost" was insufficient to support its entitlement to summary judgment. See Miller, 2014 Bankr. LEXIS 2733 at *5-6 (citing 9A V.S.A. § 3-309, and stating that, to prove

---

[5] In its reply, Chase indicates that it acquired EMC in May 2008, and EMC yielded all of its mortgage servicing obligations to Chase in 2011 (doc. # 72 at 2, n.1). Thus, it should have access to records that would support its ability to sufficiently explain the previously-filed affidavit.

6

entitlement to collect on a lost note, a claimant must prove that (1) it was in possession of the instrument and entitled to enforce it when loss of possession occurred, (2) the loss of possession was not the result of a transfer or a lawful seizure, (3) it cannot reasonably obtain possession of the instrument because the instrument was destroyed, its whereabouts cannot be determined, or it is in the wrongful possession of an unknown person or a person that cannot be found or is not amenable to service of process, and (4) the terms of the note and its right to enforce the note).

Most importantly, the conflicting evidence in the record, regarding the status of the note, calls into question the credibility of the evidence Chase has presented in support of its Motion. The credibility of the relevant evidence is further called into question by the various mortgage documents. For example, the mortgage assignment attached to the POC was dated April 29, 2009, and purported to transfer the mortgage from CTX to Citibank. The assignment in Chase's counsel's file, however, was dated March 4, 2013, and purported to transfer the mortgage from CTX to Wilmington Trust. Clearly CTX would not have the power to assign the mortgage to Wilmington Trust in 2013 if it had already transferred all of its interest in the mortgage to Citibank in 2009.

Admittedly, the claimant need not demonstrate that it held the mortgage to have authority to collect on the note. See U.S. Bank Nat'l Ass'n v. Kimball, 2011 VT 81,¶ 13, 190 Vt. 210, 27 A.3d 1087 (Vt. 2011) ("While a plaintiff in a foreclosure should also have assignment of the mortgage, it is the note that is important because where a promissory note is secured by a mortgage, the mortgage is incident to the note."); One West Bank v. Reynolds, No. 51-2-11 Wrcv, slip op. at *8 (Vt. Super. April 12, 2013); see also 9A V.S.A. § 9-203(g) & comment.9 (stating that the transfer of an obligation secured by a lien on personal property also transfers the lien, and explaining that this section codifies the common law rule applicable to both real and personal property); Restatement (Third) of Property (Mortgages) § 5.4(a) ("[A] transfer of an obligation secured by a mortgage also transfers the mortgage unless the parties to the transfer agree otherwise."). However, the obviously conflicting assignments indicate that at least one was unauthorized, and therefore presumptively suspect. Combined with the conflicting evidence as to the note status, a reasonable trier of fact could conclude that the entities involved with the Plaintiffs' loan will generate whatever evidence is necessary to support their right to collect on the note, regardless of the veracity of such assertions. At the very least, a reasonable trier of fact could conclude that, even if the entity believed in good faith that its evidence is sound, the record-keeping evinced by the transactions in this case is of such poor quality that any evidence generated therefrom is insufficient to entitle Chase to summary judgment.

In its Reply, Chase raises specific additional arguments in support of its Motion. Although the Motion may be denied on the above basis, the Court briefly addresses these arguments. First, Chase

asserts that the Plaintiffs raise a chain of title argument with respect to the note, and contends that such an argument is untenable under Vermont law (doc. # 72 at 3-4). Although Chase correctly notes that chain of title arguments are invalid in Vermont, see Wells Fargo Bank Minnesota, N.A. v. Rouleau, 2012 VT 19, ¶ 13, 191 Vt. 302, 46 A.3d 905 (Vt. 2012), the Court does not read the Plaintiff's Response to raise such an argument. Instead, the Court reads the Plaintiffs' observations about the differing evidence concerning the note status to merely challenge the credibility of the later-submitted evidence. As indicated *supra*, the Court finds such an argument sufficiently convincing to preclude summary judgment.

Chase also asserts that (1) its SUMF conclusively stated that it was the holder of the note as of August 2009, (2) the note attached to its Motion was indorsed in blank, and (3) the Plaintiffs failed to sufficiently dispute this assertion because no record evidence supports the Plaintiffs' contention that there is a dispute over who possessed the note at any relevant time (doc. # 72 at 4 & n.3). Thus, it intimates, the Court may consider its assertion of possession of the note indorsed in blank to undisputedly establish its standing. The Local Rules provide that "[t]he respondent is deemed to have admitted all facts in the movant's statement of material undisputed facts except to the extent that party controverts them in a statement of disputed material facts." Vt. LBR 7056-1(a)(3). However, the Court notes that Chase's SUMF merely states that it possessed the note as of August 2009. The SUMF does not clearly state that the note was indorsed in blank and, as discussed *infra*, it is unclear whether the Court could determine it to be. Further, to sufficiently oppose summary judgment, a party need only demonstrate that a movant has failed to meet its burden of proving that no genuine issue of material fact exists. See Vermont Teddy Bear Co., 373 F.3d at 244. Because the conflicting evidence in this case calls into question the credibility of Chase's evidence in support of its Motion, the Court finds that Chase has not met its burden of conclusively establishing its right to enforce the note.

Finally, even putting aside the initial mortgage and note documents attached to the POC, the Court is not convinced that the evidence Chase attached to its Motion is sufficient to prove its entitlement to summary judgment. Two separate pages of the note contain CTX's indorsement in blank. However, one of those indorsements is marked as cancelled. It is not obvious that a cancelled indorsement is the equivalent to an indorsement in blank. Further, if the note is not indorsed in blank, Chase's possession of the note is not necessarily sufficient to allow it authority to enforce the note. See 9A V.S.A. §§ 3-201(b), 3-205(a).

## CONCLUSION

For the reasons set forth above, the Court finds the Motion is not properly before the Court, and is therefore stricken. Alternatively, the Court finds that Chase has not demonstrated that there are no

8

genuine issues of material fact with respect to its right to enforce the note. Therefore, summary judgment is not available.

This memorandum constitutes the Court's findings of fact and conclusions of law.

August 11, 2014  
Burlington, Vermont

_____  
Colleen A. Brown  
United States Bankruptcy Judge